Ms. McCarthy? Good morning, Berly, welcome. Good morning, Berly. May it please the Court, I would respectfully appeal the trial court's rescission of a completed administrative review because the service rule at issue here simply does not confer important procedural benefits, and Pam has demonstrated no prejudice as a result due to the 17-day delay in its knowledge that petitioners had requested the administrative review. Do you think that we could flip around the prejudice thing and say that the government has demonstrated the absence of prejudice? Well, that's that's the approach that Chief Judge Rustani took in the Guangdong decision. She determined... But is that standard met by the documents in this case? Yes, Your Honor, it is. It is met. It is satisfied here. We didn't argue that in our brief because we do not believe that that is the appropriate... We do not believe that we have the burden to show harmless error. We believe that under Camara, this Court's decision in Camara, that the plaintiff, or Pam in this case, would have the burden to demonstrate substantial prejudice. And the trial court below did not even reach that issue because it determined that the service rule at issue here, per se, conferred an important procedural benefit. So you're asking for outright reversal, not vacation and remand for an assessment of prejudice? We're asking for outright reversal because the agency below, at page JA 187 on the joint appendix, the agency below made it a determination that there was no prejudice here, and we believe that that determination is supported by substantial evidence. So we're asking for reversal of the rescission and for remand of the case back to the trial court to consider Pam's other challenges to the final determination of commerce. In this case, as Chief Judge Rustani noted in the Guangdong... Can you help me with some basic facts? In some places in the brief, I read that there was a 17-page delay between the day that Pam should have been served and the day that Pam's attorney got actual notice by reading the federal record. But elsewhere, there's discussion of a 29-day delay. Can you straighten out what the delay was? Your Honor, the delay was 17 days. Pam received a total of 29 days of extensions in order to compensate for the 17-day delay. Okay, now was the 29 days of extensions throughout the whole period of about a year that the investigation was going on? The 29 days were specifically in response as part of the agency's attempt to address Pam's complaint that it did not receive service pursuant to the regulations. Were there then additional extensions of time later? Yes, there were. How many? I didn't calculate those, Your Honor. Somewhere I thought I saw six. Yes. One for 14 and one for 15 right at the start of the period of a year or so, and then six more spread out over time. Yes, and we cited them in our appendix. So it's a lot more than 29 days of added time given to Pam when you consider all of the extensions of time. Yes, Your Honor. To be clear about this, the 29 days was devoted to allowing Pam additional time to respond to the questionnaires. That's right at the very first stage. At the very first one. This is the supposed harm that occurred to him. We note that the service... So your argument is on an almost two for one ratio, they got extra time. Yes, and the other point I would like to make... But it was less extra time than they asked for, wasn't it? They asked, they originally asked for... Twice they asked for 30 days, is that right? They originally asked for 29 days, and then the Department of Commerce gave them 14 days, and they asked for another extension, and then the department ended up giving them the total amount of their original request. But I'd like to point out that the service rule is not designed to give a... It's not specific for a respondent. The service rule would require, for instance, if a respondent requests an administrative review, then the service rule requires that the petitioner be given service. Well, so what? How does that tell us that this notice requirement isn't very important, isn't intended to give an important benefit to somebody? That's the question. Because the petitioner never responds to questionnaires. So the notion that Pam seems to be suggesting that this is important because it's supposed to give the respondent an additional heads up so they can start early is not true. The regulation is party neutral. It just refers to interested parties. Not a special benefit for a respondent because the petitioner is entitled to service rules. Petitioners don't respond to questionnaires. Let me ask you something about the regulation, the language which you quote on page four of your brief. The first part of it says that a party must serve a copy. And it gives the date when they have to serve it. And then they go on to say that if the party is unable to serve a particular exporter, producer, petitioner, the secretary may accept the request for review if he determines that there was a reasonable attempt made to serve it. Now, doesn't that seemingly suggest or indicate that if they were unable to show that they made a reasonable request for, made a reasonable attempt to serve it, if they can't show that, if they just didn't try to serve it at all, that the secretary will not accept the petition for review? Yes, your honor, I think that's the strongest argument that Pam has, which is the language of the regulation. What's wrong with that argument? What's wrong with that argument is what's the consequence? The consequence is the conclusion that if the precise terms of this regulation are not satisfied, is the agency powerless to commence the review? No. Does this spell out the consequences for non-compliance, that the review has to be rescinded? No. That's the issue. There's no question there was non-compliance with this regulation. That's not the issue. The issue is what is the, does the agency, Department of Commerce, have the ability under American Farm Laws to relax the procedure requirement? Is this simply a procedural rule for the orderly transaction of business? Yes. The agency has discretion to relax this requirement. What is the purpose, why do they require that every party to the case be served? It seems to me it could have, as far as, it could have two different purposes. One is to just give them a little more time to prepare before they initiate it, or it could be to give them the opportunity before the Secretary of Commerce initiates that proceeding to reply to this request and say, don't initiate the proceeding. This is a defective request because they failed to do this, they failed to do that, or something else. Now, the first one, it seems to me, is probably cured by the additional time you gave me. But I wonder about the second. Is it a practice at all before Commerce that people, when they get a copy of one of these requests for an annual review, write in and say, or call and say, don't initiate the annual review because, and then they give various defects in the petition? Well, that's certainly a possibility, but there's a couple of reasons. There are circumstances contemplated under the regulations at which there would be no service. For instance, if the department self-initiates a review. I think you should answer the question. Is it a common practice? Does this ever happen? Do you know? You may not know. I do not know, Your Honor, to be honest with you. I'm sorry, Your Honor, I do not know. But I can tell you that the regulatory scheme contemplates- But is that one, is that, because that would seem to me to provide one explanation for this rule. There would be, if that's the case, that would be a very imperfect regulation, because the regulation does not provide for service in the case where the department self-initiates a review. And it also doesn't provide for service in the case that an interested party requests a review. Commerce has the discretion to add additional respondents to the review. Those additional respondents do not receive service. This is not a notice provision. The statute provides for notice in the Federal Register. So to the extent that there's some sort of complaint by an interested party as to whether the review may be initiated, that is something that they can theoretically raise. But that's not the purpose of the service rule, because it doesn't cover, it doesn't provide complete coverage. It would be an imperfect regulation. What then is the purpose of the service rule? That's a good question, Your Honor. We believe it's just for the- Well, if we can't discern what the purpose is, how can we decide whether it accords an important procedural right? Because it is, Your Honor, it looks at the headline of this regulation. It appears in section 351.303 of the regulations, which regards filing, format, translation, service, and certification of documents. This entire regulation provides housekeeping requirements for the orderly transaction of business before the agency. And the agency- We wouldn't say that service of a complaint against me as a defendant in a district court lawsuit was just housekeeping. We'd say that service of the complaint on me as the defendant was a critical act to start off the litigation as a legitimate litigation. Absolutely, that's because the service of the complaint is a jurisdictional requirement. There's no, the statutory requirement here is notice published in the Federal Register. This is an agency procedural- But published in the Federal Register is the notice of the initiation of the proceeding. What this relates to is the petition to the Department of Commerce to initiate a proceeding. But the agency has the authority to self-initiate a review without any- Yeah, but that didn't happen here. So why does that make any difference? Because it's the authority. The issue here is the agency's strict- Then why did the agency require that a copy be served out of all the parts? The agency required that because there's routine service throughout the course of administrative proceedings. The agency doesn't wish to provide the paperwork itself. It requires service of case briefs. I mean, it's simply a service requirement. But it doesn't- Simply a service requirement. But then why does it, if all it is is a service, simply a service requirement, the agency can sort of ignore if it wishes to, why does it go on to say that if they make reasonable efforts to serve and fail to do so, then the secretary may accept it for filing. It seems to me to suggest if they make no effort to serve at all, the secretary won't accept it for filing. Now, I know you can argue that, well, an agency can always waive its own regulations, but it depends on the circumstances, what the purpose of the regulations is. If I may, Your Honor, the purpose of the regulation is, one possible reading of the regulation is to tell interested parties that if you want to request a review and you want to initiate an administrative proceeding with the department, you would better follow the department's rules, that the department's rules should be respected. But that doesn't deprive the agency of authority to conduct a review, and certainly doesn't lead to the draconian remedy of rescission of a year-long administrative effort. Well, wait, wait, wait, wait a minute. It's easy to use dramatic labels like draconian. As I understand it, there were eight respondents in this proceeding. Yes. And so the year-long effort of the Commerce Department would not be in vain if it's rescinded as to PAM, because it would still stand as to the other seven. So it's a little hysterical, it's a little over the top to say, oh, all this total waste of effort and frustration of purpose and trade laws aren't being enforced, and we're talking about one of eight defendants. The others were served, there's no question of rescission as to the other seven. So we're just talking about whether this company wasn't treated fairly under the procedures as structured by the Commerce Department itself. It didn't have to issue this regulation. It didn't have to say what it says. But once Commerce chooses to issue such a regulation, and it does say what it says, why shouldn't we require that Commerce follow its own regulation? Commerce is required to follow its own regulation. That's what the court found. But you're effectively saying they're required to do it, but if they don't do it, there are no consequences. No, we're saying that this court addressed that very squarely in Camara. This court very squarely did not countenance the agency's non-compliance with its own regulation in that case. What would be the consequence that would be harmful to Commerce for non-compliance with this regulation if rescission is not available? Upon demonstration of substantial prejudice, then rescission may be in order. But that's what the requirement is, a demonstration of substantial prejudice. Let me ask you a somewhat different question. This was a request for the sixth annual review, is that correct? Yes, sir. Now prior to the sixth annual review, I take it the duties were being assessed under the fifth annual review standard, is that right? Yes, sir. So what we're talking about here is not a total absence of any anti-dumping duties, it's the difference between the duties that were assessed under the sixth annual review and the prior duties. These people were still subject to anti-dumping duties, weren't they, even under the decision of the Court of International Trade? Yes, they were, Your Honor, but there was a significant, this year-long effect, which was for PAM, the administrative review for PAM. They probably were subjected to much slower anti-dumping. Yes, led to a significant change in the margin, and of course the purpose of commerce is to develop the most accurate margin. I would like to reserve- Because no one required commerce to promulgate this regulation directing service, did it? Commerce could have just ignored this whole problem and forgotten the regulation and just said whenever it decided to or whenever it got a petition, it could issue or initiate a new annual review. So there's no question about it, the agency voluntarily promulgated this regulation, which provides a requirement that is not contemplated in the statute. All right, thank you, Ms. McCarthy. Now, Ms. Braun, where are we on time? We've exceeded the 15 minutes. The plaintiff's total 15 minutes has already expired? Your Honor, I think we might have confused counsel with the lights here. Mr. Smith will give you the two minutes, but only on points not previously argued, don't repeat anything that Ms. McCarthy already said. Thank you, Your Honor. As a matter of fact, I won't repeat anything. I will just address questions that came from the bench and try to answer them if I can. What purpose, first question from, I think, you, Judge Bichot was, do people, or from Judge Friedman, do people challenge the initiation? The answer to that is squarely no. No one has ever challenged the initiation of an administrative review. There is a process to challenge the initiation of an original petition based on standing. Administrative reviews are taken at the, are, shall, the statute says, shall be conducted. It's mandatory, and that's a change. The old statute, administrative reviews were automatic. To minimize the burden on commerce, the statute was changed to say, if a third party applies in commerce to statutory requirements, commerce receives a request and publishes notice in the federal register, then a review shall take place. No one has ever challenged that. Those are the only statutory requirements. Can commerce refuse when it gets a request for an annual review? Can commerce decline to conduct an annual review? No, it may not, Your Honor. Pardon? No, it may not, Your Honor. It must require, and the reason for that is this court's opinion in DNL Supply. The purpose of the administrative review process is to calculate current, I emphasize, current margins of dumping as accurately as possible. Current is for every review. Once it's filed, once a petition for an annual review is filed, commerce must conduct the annual review. Yes, that is what the statute says, Your Honor. Now suppose the petition for review is defective in some way. What happens then? Commerce- This court- Then sends it back. Just to be clear, Your Honor, it's not a petition, it's a simple letter. And what you have to do is just name the company you wish to have reviewed in the period of entrance. This court's answered that question in Camara and Torrington and Floral Trade Council. Suppose a petition for annual review was filed and didn't name any companies as prospective respondents. What happens then? You've answered that question in the Floral Trade Council case, Your Honor. A petitioner requested a review of all exporters, and commerce said no, we can't initiate on that because our different regulation in this case requires that you specifically name the exporters that you want us to review. And what's the reason for that? The reason goes back to notice. Judge Michelli, you asked the question, what's the purpose of this regulation? It's notice, but it's a redundant regulation. Notice is also provided, and this court has found this many times, notice is provided through publication in the federal register of the company's name and the fact that a review will be requested. Well, I don't understand why if notice necessarily must be provided in the federal register, why commerce adds this additional notice. It's a redundant regulation, it shouldn't be. It becomes an abusive, what the lower court's decision did, though, was to trump the statute with its interpretation of this regulation. It's a no harm, no foul regulation until the lower court issued its opinion in this case, which was contrary to the opinion just a few months prior in the NSA case, which we assert is correct. Your time has expired, and we gave you an additional minute in addition. Mr. Simon will hear from you. Thank you, Your Honor. Thank you, Your Honor. I'm David Simon, and I represent Pam, the respondent below. We just heard something very interesting, that this is a redundant regulation. One doesn't usually hear of redundant enactments in statutes or regulations, and I don't believe it is a redundant regulation. What's its purpose? I think there are two purposes, and that's the core of all of this. First of all, when a company receives the letter naming it in the review, it's true that commerce has to initiate, but it's also true that there is a lot of play that happens during that period. For instance, in the second or third of these poster reviews, the petitioner named something like 30 respondents. Commerce expressed informally to the petitioner that it didn't want to initiate all 30 reviews because they didn't have the personnel to manage it. And so there was a lot of jockeying as to who are you going to go with? Who are you going to, on whom are you going to withdraw your request for review? How about in a case like this? What is the purpose of the notice requirement in a case like this? Your Honor, I believe in a case like this, the purpose of the notice requirement is to protect American exporters when they are subject to third country litigation. I think that's why the regulation is there. That can't be right if commerce can add parties who aren't notified. I don't know those precedents where commerce can add parties who weren't notified, other than this unique situation of Chinese cases where they can make a declaration. Let's not get more far field. I'm trying to figure out, in this particular case, where your actual notice was 17 days later, then you should have gotten notice under the regulation, and then you were given 29 days extra time to answer the questionnaire. What the problem is, what the harm is, why there needs to be any judicial intervention. I can address prejudice, but first, our position is that we don't have to show prejudice because the rule is protecting an important right. On the issue of prejudice- But you haven't defined what the right is in this case where the 17 days and the delayed actual notice were made up for by extensions totaling 29 days, just at the questionnaire stage. Every respondent in every case gets a month's extension. That's commerce's practice in the anti-dumpering reviews. I've done a million of them. And so what happens is, when you're delayed by three weeks at the outset- Well, what I'm trying to get at is, what is your basis for saying an important right is granted to you as a respondent by this regulation? My basis for saying it is, commerce believed, until this case, that it was an important right, because they made a separate- Well, the regulation was issued. It didn't have to be issued. It says what it says. It doesn't have a lot of explanation. That's all undisputable. In practical effect here, you could have gotten 17 additional days to work on the case if you had gotten notice under the regulation, you didn't get it. Therefore, you were 17 days behind where you would have been. They granted almost a month of extensions. It's hard to see either prejudice or the violation of a substantial right in that scenario. At least it's hard for me. I think, Your Honor, that you hit on it earlier in the day when you said, if I'm not served with the summons and complaint in a lawsuit. This is a fundamental expectation of people when they are confronted with the American system, that they will be served with the opinion- I can't deal with people's expectations, and we're not dealing with constitutional law. Because your argument is grounded exclusively on violation of the reg, not some kind of broad due process contention. So whatever foreigners may perceive or whatever due process arguments could have been made aren't part of this case. It really comes down to the facial violation of a regulation of perhaps unclear purpose. You can say that it provides an important right. Ms. McCarthy can say, no, it doesn't. How are we to decide? We can't flip a coin. I think you can decide by looking at the place of the regulation. Why are there two regulations for service, and one of them pertains specifically to this instant in time when the petitioner files its request for review? She says so the Commerce Department Xerox machines won't get worn out by having to make copies of everything for everybody and distribute them. But not so, your honor, because there is a general service requirement other than this specific one that relates to review requests. This rule says in addition to the service requirements under the other paragraph. So we don't generally concede that regulations are redundant. If this regulation is here, it's here for a reason. And the reason is- We're not doubting it's here for a reason. We're trying to get the two of you to explain to us what the reason is and how one would know that is the reason that motivated the promulgation of this reg. I think you're stuck with the evidence of the timing, the fact that it was never in the rules until after the Uruguay Round Agreements Act, and the explanation of the legislative history that I put in the agreement. Am I correct that you make no contention that as a result of you are not being served with this petition, you were precluded from introducing any evidence in the sixth annual review that you otherwise would have been able to introduce? Your Honor, Pam answered all the questionnaires. They never- I take it the answer to my question- The answer is- You make no claim that you suffered that sort of prejudice. That's correct. We answered all the questionnaires. We never got as much time as we wanted, but we answered. And I'm- I mean, you may have had to work overtime, but that's hardly legal prejudice. We may not have been able to catch up, in fact, but- You make no claim that if you had been served with this petition when it was filed with Commerce, you would have been able to produce the following additional evidence, which you didn't have time to produce. I would love to make such a claim, but there's no record for it. This is a great pleasure. The lawyers, on occasion, don't say everything that would be self-serving. We appreciate your candor. Your Honor, sometimes it's necessary. But I would like to say something else, if I may. The rule in the American Farm Line's case tells us that we can, that the agency can relax its administrative rules when the ends of justice require it. And I'd like to think about that just for a second, because in this case, what happened? The petitioner, as far as you can see from the record, simply failed to be cognizant of the rule. They filed a defective request. And the Commerce Department- Did they serve others? Yes. Yes, they did. You're the only one that wasn't served. Let me come back to an earlier question of yours. This was the Sixth Review. PAM did not participate in the Fifth. They participated in the Fourth. And what the petitioner did was to serve the people who had participated in the Fifth. But because PAM wasn't on that list, they didn't pick them up. They should have. The rule told them to. They knew PAM because they were in litigation with PAM and on appeal. But they failed to. Okay. And what happened next? Commerce got the review request, and they also were not cognizant of their own rule. They didn't issue, they didn't make a decision that the interests of justice require us to proceed with this because of something, something. They didn't exercise their discretion. They simply went forward with the case. They issued a notice of initiation of the proceedings. Yes. And the very next day, counsel for PAM called them up and said they were appealing. So they were aware of it. Appearing, yes. And there's also some indication, isn't there, that there was a telephone conversation a few days before in which they told PAM's lawyer that they were going to initiate the proceedings? I'm not sure if it was before the initiation, but roughly contemporaneous, yes. All that is true. Was that you? No, it was not me. It was another lawyer. But what is really clear here is that Commerce wasn't aware that, Commerce did not make a decision to go forward with this review in spite of the failure of service. Commerce just defaulted. It forgot that it had a rule. And then when we got all the way to the end of the case at the case brief time and so forth, okay, the issue came up. But back in August of the year of initiation, there's no memo on the file that says the interests of justice require us to go forward even though PAM wasn't served. What about the issue of waiver? You sought numerous time extensions and got, in each case, about half of what you asked for, as I recall. And only, if I'm recalling correctly, after a year of Commerce investigation and the issuance of the preliminary results, did you claim a violation that entitled you to rescission. Isn't that awfully late in the game? When the game's really over to suddenly say, oh, this whole thing has to be halted and treated as null because back at step one of this long journey, there was a 17-day delay in our getting notice. Your Honor, in their first extension request, PAM specifically cited the service rule and said, because of the violation of the service rule, we're late getting out. I understand that. But rescission was not asked for until after the entire investigation was completed. I wish I could answer otherwise, but you're right. You're right. Now, why shouldn't a court look at that and say, hey, wait a minute. Maybe that's just too long a delay. Maybe that constitutes a waiver. Because the counsel for PAM at that time did lead Commerce to the rule, the specific rule that we're talking about now. And Commerce could have implemented something at that point. Could have rescinded. Other than extensions? It rescinded. They rescind reviews. Commerce rescinds reviews. But it seems to me, if the complaint was, if the objection that your client had to the sixth annual review was they hadn't been served with the copy of the petition, I would have thought that at the point when they got a copy of the order initiating the proceedings, they would have immediately moved to dismiss the proceedings, saying we were not served. Well, we don't have that kind of practice. But I understand what you're saying. In substance, we would have had a better record before you if we had done that. It wasn't done. It's not just a better record in light of what Judge Michella said. It looks as though maybe you were trying to wait and see what the outcome would be. And if the outcome was one you liked, then you'd do nothing. But if the outcome was an unfavorable one, then you could come in and say, I'll rescind the whole thing because we didn't get copies. Your Honor, Pam was sitting at that point with a 4% margin, which is commercially nothing. Nobody, nobody would go through all of an anti-dumping review voluntarily in the hopes of improving a 4% margin down to three or two and a half. And I mean, it's just not a game of chance that any respondent would take. Anti-dumping is anathema. It's a very difficult game for the clients to play, and they don't undertake it on that kind of basis. I wish they did sometimes. Mr. Simon, a relevant question as a matter of curiosity. In the record appears, among a great many other documents, a letter on your stationery. And I noticed that your stationery reflects that you have a partner or associate who's listed as being admitted in Izmir, Turkey. That's a kind of an unusual letterhead. Your Honor, if I may, this investigation implicates that whole situation. There was a pasta case against Turkey, as well as Italy, in 1995. And- You ended up with a law partner out of that earlier battle? Your Honor, in-house counsel at one of the clients, it happens, people fall in love, and my wife is here today. She is my partner in life, she's not admitted to your court. Your spouse, your partner in all senses of the word. Exactly, it's not a bad way to put it. I didn't mean to divert you, but it was just such an unusual letterhead that I couldn't help notice that. Well, congratulations to both of you. Anything further on your defense of the judgment? Your Honor, I just want to touch really briefly on this Guandong chemical case that Judge Rastani issued what I think is intellectually a very interesting opinion. And I don't know how the court is going to resolve- Is that the case that went in the Court of International Trade that went the other way? Well, it went the other way, but there's an awful lot of analysis in it, and it's a difficult and interesting decision. In the end of the day, if there is some sort of harmless error where the government has a burden to show that the error was harmless. I would suggest to you, they can't meet that error in this case for what I think are obvious reasons, having given us half of each extension that we requested. PAM was simply never able to put its best efforts into- Well, we can't decide that now. We can't let you testify on that either. That would require some kind of record development and trial court fact finding, as Judge Mayer often reminds us, that appellate courts aren't supposed to do fact finding. So we don't want to begin doing that here. I think we have your argument well in mind. Thank you, and Ms. McCarthy, your time I think expired. If you have something important to add, you may have a minute. Thank you. Just very quickly, I'd like to respond to Judge Freeman's question that I don't think Mr. Simon had an opportunity to respond to. To answer your question, Judge Freeman, four other respondents were not served, and that's demonstrated by comparing pages 28 and 29, which list all the companies identified in the certificate of services on J830, indicating that only four of the eight respondents were served. The four other respondents who were not served filed a questionnaire responses and never complained about the lack of service. Thank you very much. All right, we thank both counsel. We'll take the appeal under advisory.